Gregory P. VIOLETTE, Petitioner,

v.

UNITED STATES of America, Respondent.

No. CIV. 04–135–P–S, CRIM. 00–26–B–S.

United States District Court, D. Maine.

April 8, 2005.

Margaret D. McGaughey, Office of the U.S. Attorney, District of Maine, F. Mark Terison, Office of the U.S. Attorney, District of Maine, Portland, ME, for United States of America.

## ORDER ON MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

SINGAL, Chief Judge.

Before the Court is Petitioner Violette's Motion to Vacate, Set Aside or Correct Sentence (Civil Docket # 1). For the reasons stated below, the motion is DENIED.

On October 31, 2002, this Court sentenced Petitioner to 87 months imprisonment after he plead guilty to bankruptcy fraud, mail fraud, wire fraud, money laundering, and making false statements to a financial institution. Petitioner brings this habeas petition pursuant to 28 U.S.C. § 2255, requesting relief on two grounds: (1) that new evidence impugning the credibility of the psychologist who examined Defendant to determine his competency to stand trial requires that his conviction be vacated; and (2) the Supreme Court's decision in *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), renders Petitioner's sentence unconstitutional, requiring it to be vacated. Given the "emerging complexity" of the issues involved in this habeas petition, the Magistrate Judge appointed counsel to the Petitioner (Civil Docket # 12). Appointed Counsel conducted an examination of the issues involved in the case, and filed a Response to the Government's Opposition (Civil Docket # 22) in which he stated that he was "unable to find any non-frivolous issues to raise in this Petition relating to either Dr. Patenaude's evaluation of Mr. Violette, Mr. Violette's competency during the proceedings below, or Mr. Violette's

Bruce M. Merrill, Portland, ME, for Gregory Paul Violette.

sentencing hearing."[1] (Resp. to Gov't's Opp'n (Civil Docket # 22) at 3.)

## A. Misconduct of the Psychological Examiner

The basis for the first ground of Petitioner's motion is the recent finding by the Office of Internal Affairs of the U.S. Bureau of Prisons that the psychiatrist who evaluated Petitioner prior to his guilty plea, Dr. Thomas Patenaude, falsified the records of four federal inmates "to make it appear he met with inmates when in fact he had not." (Gov't's Opp'n to Mot. to Vacate, Set Aside or Correct Sentence (Civil Docket # 16) at 23.) Petitioner received a psychological examination from Dr. Patenaude at the order of the Court after announcing his intent to pursue an insanity defense at trial. After receiving the results of the examination, Petitioner withdrew his Motion for a Competency Hearing. Presumably, Petitioner believes that the recent revelations regarding Dr. Patenaude's misconduct casts doubt upon the reliability of Dr. Patenaude's finding that Petitioner was competent to stand trial.

The First Circuit has expressed some doubt as to whether habeas relief under 28 U.S.C. § 2255 is available on the basis of newly-discovered evidence. *See Moreno–Morales v. United States*, 334 F.3d 140, 149 (1st Cir.2003). If relief is available at all, Petitioner must meet the "high standard" of showing that the evidence "would probably have resulted in a different verdict." *Cruz–Sanchez v. Rivera–Cordero*, 835 F:2d 947, 948 (1st Cir. 1987) (citing *Grace v. Butterworth*, 586 F.2d 878, 881 (1st Cir.1978)). In this case, it is clear that no such showing by the Petitioner is possible.

After thoroughly reviewing the record in this case, including transcripts of the hearing before the Magistrate Judge in which Petitioner withdrew his motion for a competency hearing (Criminal Docket # 79), the change of plea hearing before this Court (Criminal Docket # 41), and the sentencing hearing (Criminal Docket # 68), the Court agrees with the Government and Petitioner's counsel that the findings of Dr. Patenaude's examination had no effect on the outcome of Petitioner's case. While Dr. Patenaude's misconduct may cast doubt upon his credibility, the fact remains that Petitioner withdrew his motion for a competency hearing (Criminal Docket # 31) after receiving Dr. Patenaude's re-

---

1. Counsel cites *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) for the proposition that a court-appointed attorney is not required to press an appeal if he can find no non-frivolous issues. *Anders* allows a court-appointed attorney to withdraw from a case on appeal if, after a "conscientious examination," he "finds his case to be wholly frivolous." *Id.* at 744, 87 S.Ct. 1396. The request for withdrawal must be accompanied by "a brief referring to anything in the record that might arguably support the appeal." *Id.* The court must then undertake "a full examination of all the proceedings" and decide whether the appeal is indeed frivolous. *Id.*

It is not clear to the Court that *Anders*, which involved a direct appeal, is applicable to habeas proceedings even if the Court has appointed counsel to the petitioner. *See Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) (holding that a court-appointed attorney need not comply with *Anders* in withdrawing from a case involving the collateral appeal of a conviction in state court). Since there is no constitutional right to representation for prisoners mounting collateral attacks on their sentences, the constitutional concerns underlying the *Anders* holding would appear to be inapplicable. *Id.* at 554–555, 107 S.Ct. 1990. However, finding that there is no harm in following the *Anders* procedure in light of the particular facts of this case, the Court follows counsel's lead without expressing any opinion on whether the *Anders* procedure must or even should be followed in future habeas cases where there is court-appointed counsel.

port. Since Petitioner did not press the issue of his competence, the credibility of Dr. Patenaude never arose as an issue for the Court's consideration Petitioner cannot be said to have been prejudiced by the existence of undiscovered impeachment evidence against a witness whom Petitioner never had occasion to cross-examine. Although Dr. Patenaude's report was entered into the record, the Magistrate Judge explicitly indicated that it was admitted solely for the purpose of establishing a factual basis for Petitioner's decision to withdraw his motion for a competency hearing, not for the truth of its finding that Petitioner was in fact competent to stand trial.

Furthermore, as the detailed description in Government's Opposition to Petitioner's Motion suggests (*see* Civil Docket # 16 at 31–34), the Magistrate Judge extensively questioned Petitioner to assess his competence to withdraw his motion for a competency hearing. Both Petitioner and his attorney repeatedly expressed confidence in Petitioner's ability to understand the proceedings against him, waive his rights, and otherwise stand trial and participate in his defense. The Magistrate Judge specifically inquired of Petitioner whether he had "any dispute or any question about" Dr. Patenaude's conclusion that "you were competent to stand trial and that you had a understanding of the nature of these changes and that you were in—you were able to intelligent—knowingly and voluntarily waive certain rights or proceed with certain matters." (Transcript of Motion Hearing (Criminal Docket # 79) at 5.) Petitioner replied "No, not the ones you mentioned, your Honor, no." (*Id.* at 5–6.) Later in the hearing, Petitioner's counsel stated:

I am confident and can say on the record that I've reviewed the issue of Mr. Violette's competency or ability to stand trial and to understand and assist in his

defense. And I am confident that, based on those discussions and on his representations this morning, that he is fully competent to stand trial today.

(*Id.* at 12.) The Magistrate Judge noted that Petitioner was nodding his head as counsel made this statement. (*Id.* at 12–13.) In short, the responses of Petitioner and his attorney to the Magistrate Judge's questions indicate that Petitioner had a rational as well as factual understanding of the proceedings against him. The transcript provides no suggestion that Petitioner lacked the capacity to understand the proceedings or to assist counsel. *See Godinez v. Moran*, 509 U.S. 389, 396, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993).

The Court also conducted its own examination of Petitioner to determine his competency to plead guilty at the change of plea hearing and again at the sentencing hearing. During both hearings, the Court questioned Petitioner and his attorney regarding Petitioner's competency. After reviewing the transcript of those hearings, the Court is confident that it did not err by failing to order a competency examination before accepting Petitioner's plea or imposing his sentencing. As with his answers to the Magistrate Judge's questions, Petitioner's answers to the Court's questions demonstrate that he had a rational and factual understanding of the proceedings against him and was able to assist counsel in his defense.

## B. *Blakely/Booker* Claim

█ Petitioner also challenges the constitutionality of his sentence of 87 months imprisonment under *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). *Blakely* held that a defendant has a constitutional right to have his maximum sentence be determined based upon only those facts that he has

admitted or that the Government has proven to a jury beyond a reasonable doubt. Following *Blakely,* the Supreme Court determined in *United States v. Booker* that the Federal Sentencing Guidelines, which rely upon judicial fact-finding by a preponderance of the evidence, violated the Sixth Amendment. —— U.S. ——, ——, 125 S.Ct. 738, 746, 160 L.Ed.2d 621 (2005). The *Booker* Court remedied this constitutional flaw by rendering the Guidelines advisory rather than mandatory. *Id.* Petitioner claims that his sentence, which was imposed under the old mandatory guidelines system, must now be vacated in light of *Blakely* and, presumably, *Booker.*

Petitioner's claim must fail. *Booker* itself states that its holding applies "to all cases on direct review." *Id.* at 769. The clear implication of this statement is that the decision does not apply to cases on collateral review. There is no basis for treating *Blakely* differently. Such a view is consistent with the Supreme Court's recent holding that *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002)—a decision extending the Sixth Amendment's right to jury factfinding to facts necessary to impose a death sentence—"does not apply retroactively to cases already final on direct review." *Schriro v. Summerlin,* —— U.S. ——, ——, 124 S.Ct. 2519, 2526, 159 L.Ed.2d 442 (2004). It is also consistent with the other courts in this District that have considered this question, all of which have reached the same conclusion. *See, e.g., Gerrish v. United States,* 353 F.Supp.2d 95, 96 (D.Me. 2005) ("*Blakely v. Washington* and *United States v. Booker* are not applicable to cases that were not on direct appeal when they were decided."); *Quirion v. United States,* Civ. No. 05–06–B–W, 2005 WL 83832, at *2005 U.S. Dist. LEXIS 569, *7–*10 (D.Me. Jan. 14, 2005) (rec. dec. *aff'd* Feb. 1, 2005).

## C.   Conclusion

Since a thorough review of the record in this case reveals no basis for granting the relief sought by Defendant, his 28 U.S.C. § 2255 motion is, accordingly, DENIED. SO ORDERED.